Alan G. Laquer (SBN 259257)
alan.laquer@knobbe.com
Jonathan A. Menkes (SBN 279677)
jonathan.menkes@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone: 949-760-0404
Facsimile: 949-760-9502

Attorneys for Defendant
GHOST MANAGEMENT GROUP, LLC d/b/a WEEDMAPS

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| OCTAVIO SANCHEZ, d/b/a WEEDMENU, an individual,<br><br>Plaintiff,<br><br>v.<br><br>GHOST MANAGEMENT GROUP, LLC d/b/a WEEDMAPS, a Delaware limited liability company, and VIRTUAL SUPPORT, LLC,<br><br>Defendants. | Case No.<br>8:19−cv−00442 AG (KES)<br><br>**DEFENDANT WEEDMAPS' OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS**<br><br>Honorable Andrew J. Guilford |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

Page No.

I.    INTRODUCTION ................................................................................1

II.   FACTUAL BACKGROUND ..............................................................3

III.  LEGAL STANDARD ........................................................................8

IV.  ARGUMENT......................................................................................9

      A.    Mr. Sanchez Alleges Infringement of a Design Mark but
            Does Not Identify Any Allegedly Infringing Design ......................9

      B.    Even Under Mr. Sanchez's Theory, Weedmaps Has Prior
            Use of the Character Mark ..............................................................11

      C.    Mr. Sanchez is Impermissibly Seeking to Enforce
            Unregistered, Pending Trademark Applications............................12

V.   CONCLUSION .........................................................................13

1

**TABLE OF AUTHORITIES**

2

**Page No(s).**

3

4

*AMF Inc. v. Sleekcraft Boats,*
   599 F.2d 341 (9th Cir. 1979) ....................................................8, 11

5

6

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)...................................................................8

7

8

*Bentley v. NBC Universal, LLC,*
   No. CV1603693TJHKSX, 2016 WL 10570587
   (C.D. Cal. Sept. 28, 2016) .....................................................9, 12

9

10

*DC Comics v. Towle,*
   989 F. Supp. 2d 948 (C.D. Cal. 2013), aff'd, 802 F.3d 1012
   (9th Cir. 2015) .......................................................................8, 11

11

12

*Hinds Investments, L.P. v. Angioli,*
   654 F.3d 846 (9th Cir. 2011) ...............................................8, 11

13

14

*JAT Wheels Inc. v. JNC Wheel Collection,*
   No. CV 14–04898 JVS, 2014 WL 4568323
   (C.D. Cal. Sept. 8, 2014) ......................................................9, 13

15

16

*Playmakers, LLC v. ESPN, Inc.,*
   297 F. Supp. 2d 1277 (W.D. Wash. 2003), aff'd, 376 F.3d 894
   (9th Cir. 2004) ...........................................................................9

17

18

*Wal–Mart Stores, Inc. v. Samara Bros., Inc.,*
   529 U.S. 205 (2000)..............................................................9, 13

19

**OTHER AUTHORITIES**

20

Lanham Act.................................................................................*passim*

21

22

23

24

25

26

27

28

1

## I. **INTRODUCTION**

Plaintiff Octavio Sanchez d/b/a Weedmenu ("Mr. Sanchez") alleges trademark infringement and other closely related causes of action based on his purported rights from two pending trademark applications, Serial Nos. 88171614 and 88200721, which are each for the following design mark:



(Complaint [Dkt. No. 1] at ¶¶ 17 and 18, and Exs. 14 (status of Trademark Application Serial No. 88171614) and 15 (status of Trademark Application Serial No. 88200721) to the Declaration of Alan G. Laquer in Support of Weedmaps' Motion to Dismiss[1]).

Neither of Mr. Sanchez's trademark applications has been registered.  Exs. 14 and 15.  Mr. Sanchez describes the mark he is seeking rights to as:

> The color(s) neon green and white and black is/are claimed as a feature of the mark. The mark consists of neon green, white and black, the words "Weedmenu" with a capital "W" with two leaves over the text, one on the right considerably larger than other. The word "Weed" is neon green as is the larger leaf. The word "menu" is white as is the smaller leaf. The word "Weedmenu" is in tech font. The background of logo is black.

(Exs. 14 and 15 at "Description of Mark").

The mark is classified as "design plus words, letters, and/or numbers."  Exs. 14 and 15 at "Mark Drawing Code."

/ / /

---

[1] All exhibit numbers herein refer to the exhibits to the Declaration of Alan G. Laquer in Support of Weedmaps' Motion to Dismiss.

1    Mr. Sanchez accuses two defendants, Ghost Management Group, LLC d/b/a/
2  Weedmaps ("Weedmaps") and Virtual Support, LLC ("Virtual Support").   Mr.
3  Sanchez bases each of his claims against each of Weedmaps and Virtual Support on
4  their alleged responsibility for the weedmenu.com website.   Complaint ¶¶ 19, 43,
5  48, 56, 63, 72, 79, and 86.  The weedmenu.com website repeatedly identifies Virtual
6  Support as the only entity responsible for it.  Exs. 3 and 4.  Weedmaps has repeatedly
7  explained to Mr. Sanchez that Weedmaps is not responsible for the weedmenu.com
8  website.  Exs. 12, 13, and 18.  Prior to Mr. Sanchez initiating this case, Weedmaps
9  alerted Mr. Sanchez of this fact in response to a cease and desist letter Weedmaps
10  received from Mr. Sanchez.  Ex 12.  Weedmaps also provided Mr. Sanchez with a
11  sworn declaration from Weedmaps' Vice President, Engineering, Chris Steinmeyer,
12  in support of this fact.  Ex. 19 and Declaration of Chris Steinmeyer Regarding the
13  Weedmenu.com Domain.  Weedmaps has further confirmed to Mr. Sanchez that
14  Weedmaps sent Virtual Support a cease and desist letter on August 16, 2018 based
15  on Virtual Support's operation of the weedmenu.com website infringing upon
16  Weedmaps' trademark and other rights.  Exs. 8-10 and 18.
17    However, even if Mr. Sanchez's erroneous factual allegation that Weedmaps
18  supposedly is responsible for the weedmenu.com website were true—which it is
19  not—then Mr. Sanchez's case would still suffer at least three other fatal flaws.
20    •    First, Mr. Sanchez alleges trademark infringement based upon a design
21  mark (also called a special form mark, or stylized logo), rather than a standard
22  character mark (also called a word mark).  But, Mr. Sanchez does not allege any
23  infringement of the design mark's required design.  He ignores the fact that the
24  corresponding design of the weedmenu.com website logo is significantly distinct
25  from the design of the design mark he asserts, as shown here:
26  / / /
27  / / /
28  / / /

(Ex. 2 (weedmaps.com logo)).

Ignoring that design distinction, Mr. Sanchez instead alleges infringement based on the mere use of the characters "WEEDMENU." However, he does not have a standard character mark and therefore cannot claim such infringement.

- Second, Mr. Sanchez alleges that his trademark rights are based on first use in commerce on September 1, 2017. Complaint ¶ 32.[2] But, Mr. Sanchez alleges that Weedmaps has supposedly been using the mark since 2012. Complaint ¶ 33. Therefore, even under Mr. Sanchez's own erroneous theory, if Weedmaps were responsible for the weedmenu.com website (which it is not), then it would still not infringe upon any rights of Mr. Sanchez in the mark.

- Third, Mr. Sanchez does not allege to have any registered trademark rights, and bases his claims instead on pending applications. Trademark infringement actions under the Lanham Act require that the trademark at issue be registered—claims cannot be pursued based on pending applications.

## II.  FACTUAL BACKGROUND

Defendant Weedmaps is a leading technology platform, marketing service, directory, and online community for the legal cannabis industry with over 4.8 million active users on its weedmaps.com website and related mobile applications. Weedmaps' iOS app for iPhone and iPad has over 89,000 ratings and is one of the most popular apps in the Medical category of Apple's App Store. Ex. 21.

/ / /

---

[2] In contrast, Mr. Sanchez identified in his trademark applications themselves that his first use of the mark in commerce was either February 4, 2018 or February 14, 2018. Exs. 10 and 11.

Weedmaps was founded in 2008 in Orange County.  Today, Weedmaps is a global brand headquartered in Irvine, California.   Through its hundreds of employees, thousands of partners, millions of active monthly users, decade of growth, and significant investments in intellectual property, Weedmaps has built its world-recognized brand into one of its most valuable assets.  Weedmaps has made significant investments in promoting its brand.  Examples of Weedmaps' advertising include the following:



/ / /

Plaintiff Mr. Sanchez claims responsibility for the weedmenu.org website. Complaint at ¶ 8.  Mr. Sanchez previously used a design for his "weedmenu" logo that blatantly copied Weedmaps' widely renowned design, including the use of sea-foam green and white on a contrasting black background, with all lower-case lettering and a sans serif font.  Ex. 5 at ¶¶ 33-44.  The following table illustrates some examples of Mr. Sanchez's prior copying of Weedmaps' design:

|  | Weedmaps | Mr. Sanchez |
|---|---|---|
| App Launch Screens |  |  |
| Clothing |  |  |

|  | **Weedmaps** | **Mr. Sanchez** |
|---|---|---|
| App Logos |  |  |

Ex. 5 at ¶¶ 19, 26, 34, and 43.

Mr. Sanchez refused Weedmaps' demands that he change his infringing logo (Ex. 5 at ¶ 49) and on February 27, 2018, Weedmaps filed a complaint against him, *Ghost Management Group, LLC d/b/a Weedmaps v. Octavio Sanchez*, Central District of California Case No. 8:18-cv-337 (the "*Weedmaps vs. Sanchez* case"). Ex. 5.  Weedmaps pointed out in its case that it owns Trademark Registration No. 4,196,102, for the standard character mark "WEEDMENU," on the supplemental registrar, based on a trademark application filing from 2011 and a first use in commerce in April 2010.  Ex. 5 at ¶¶ 20-23 and Ex. 6.

During the course of the *Weedmaps vs. Sanchez* case, Weedmaps sent a cease and desist letter to Virtual Support, based on its operation of the weedmenu.com website.  Exs. 8-10.  The weedmenu.com website's Privacy Policy and Terms & Conditions each identify Virtual Support as being responsible for the website.  Exs. 3 and 4.

Mr. Sanchez has since changed his logo (Complaint ¶ 14) and the parties stipulated on October 26, 2018 to the dismissal with prejudice of the *Weedmaps vs. Sanchez* case.  Ex. 7.  On November 20, 2018, Mr. Sanchez abandoned his then-pending Trademark Application Serial No. 87299203 for the weedmenu logo design that had copied Weedmaps' design.  Ex. 16 (Trademark application to Mr. Sanchez, showing status of "DEAD" and abandonment date of November 20, 2018).

Around January 29, 2019, Weedmaps received a cease and desist letter from Mr. Sanchez, accusing Weedmaps of trademark infringement based on allegedly

operating the weedmenu.com website.  Ex. 11.  Mr. Sanchez also addressed the letter to Virtual Support—the company that *is* identified on the weedmenu.com website as responsible for the site.  Weedmaps promptly responded on February 1, 2019 that it "is not responsible for either Virtual Support, LLC or the weedmenu.com website."  Ex. 12.  Mr. Sanchez acknowledged receipt of that email and did not present any questions in response.  Ex. 13.

Yet despite the exchange between Weedmaps and Mr. Sanchez with respect to Mr. Sanchez's cease and desist letter, on March 6, 2019, Mr. Sanchez filed his complaint in this case against Weedmaps and Virtual Support, alleging trademark infringement and related causes of action, based entirely on Weedmaps and Virtual Support both allegedly being responsible for the weedmenu.com website. Complaint ¶¶ 19, 43, 48, 56, 63, 72, 79, and 86.  Mr. Sanchez bases his complaint on his pending, non-registered Trademark Application Serial Nos. 88171614 and 88200721.  Complaint ¶¶ 17 and 18; Exs. 14 and 15.  In contrast, Weedmaps' Trademark Registration for the standard character mark "WEEDMENU" is registered as Trademark Registration No. 4196102, on the supplemental register, from Trademark Application Serial No. 85295741.  Ex. 17.

Upon receiving notice of the complaint in this case, Weedmaps again reached out to Mr. Sanchez to explain to him that Weedmaps is not responsible for the weedmenu.com website.  Ex. 18.  After discussions with Mr. Sanchez, Weedmaps prepared a sworn declaration from its Vice President, Engineering, further confirming, *inter alia*, that "Weedmaps does not own or control the weedmenu.com domain, directly or indirectly," and that "Weedmaps does not own or control Virtual Support, LLC, directly or indirectly."  Declaration of Chris Steinmeyer Regarding the Weedmenu.com Domain.  Mr. Sanchez responded, calling the declaration "ambiguous at best," and argued that Weedmaps "continue[s] to not accept responsibility" for the weedmenu.com website.  Ex. 20.  In addition to repeatedly and unequivocally explaining that it does not own the weedmenu.com website,

1    Weedmaps has explained to Mr. Sanchez that, "[e]ven if Weedmaps did own the

2    weedmenu.com domain (which they don't) – they still wouldn't be concerned by

3    [the] lawsuit because you don't have a trademark registration on the name

4    'WEEDMENU' itself without the added requirement of a specific design." Ex. 20

5    at 2. Yet, Mr. Sanchez continues to pursue his baseless claims. Weedmaps now

6    moves to have Mr. Sanchez's claims against it dismissed. Weedmaps is not taking

7    any position, through this Motion, regarding Mr. Sanchez's claims against Virtual

8    Support.

9                          **III.  <u>LEGAL STANDARD</u>**

10       A pleading fails to state a claim when it (1) lacks a cognizable legal theory or

11   (2) identifies a cognizable legal theory, but fails to allege sufficient supporting facts.

12   *Hinds Investments, L.P. v. Angioli*, 654 F.3d 846, 850 (9th Cir. 2011). To survive a

13   Rule 12(b)(6) motion to dismiss, the pleading must set forth factual matter that, if

14   accepted as true, would "state a claim to relief that is plausible on its face." *Ashcroft*

15   *v. Iqbal*, 556 U.S. 662, 678 (2009). The pleading must therefore provide more than

16   legal conclusions and "[t]hreadbare recitals of the elements of a cause of action." *Id.*

17   (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

18       To prevail on a claim for trademark infringement, a plaintiff must show

19   "(1) that it has valid trademark rights; and (2) that Defendant's use of a similar mark

20   is likely to cause confusion." *DC Comics v. Towle*, 989 F. Supp. 2d 948, 955 (C.D.

21   Cal. 2013), aff'd, 802 F.3d 1012 (9th Cir. 2015). The "core element of trademark

22   infringement is the likelihood of confusion, i.e., whether the similarity of the marks

23   is likely to confuse consumers about the source of the products." *Id.* Allegations of

24   infringement of design trademarks are analyzed under the *Sleekcraft* factors, and

25   require evaluating the registered mark and allegedly infringing mark in their entirety.

26   *Id.* at 957 (C.D. Cal. 2013); *see AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49

27   (9th Cir. 1979).  In evaluating the alleged infringement of design marks,

28   "comparison of the visual appearance of two marks can involve consideration of

1    color of lettering and/or background, font or typeface, and the overall style or

2    appearance of the marks." *Playmakers, LLC v. ESPN, Inc.*, 297 F. Supp. 2d 1277,

3    1282 (W.D. Wash. 2003), aff'd, 376 F.3d 894 (9th Cir. 2004).

4         Trademark actions under the Lanham Act require that the trademark at issue

5    has been registered—claims cannot be pursued based on pending applications.

6    *Bentley v. NBC Universal, LLC*, No. CV1603693TJHKSX, 2016 WL 10570587, at

7    *2 (C.D. Cal. Sept. 28, 2016); *see also JAT Wheels Inc. v. JNC Wheel Collection*,

8    No. CV 14–04898 JVS, 2014 WL 4568323 at *2 (C.D. Cal. Sept. 8, 2014), *Wal–*

9    *Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 209 (2000).

10                        **IV.  ARGUMENT**

11        Each of Mr. Sanchez's claims against Defendant Weedmaps should be

12   dismissed because Mr. Sanchez has failed to state a claim for which relief can be

13   granted.  Mr. Sanchez's complaint lacks a cognizable legal theory regarding what

14   his supposed trademark rights actually are.  Mr. Sanchez's complaint also fails to

15   allege sufficient supporting facts for its causes of action.

16   **A.    Mr. Sanchez Alleges Infringement of a Design Mark but Does Not**

17   **Identify Any Allegedly Infringing Design**

18        Mr. Sanchez claims that he "owns rights to mark Weedmenu through Lanham

19   Act first use in commerce in connection with computer services."  Complaint ¶ 11.

20   He identifies his pending trademark applications, Serial Nos. 88171614 and

21   88200721, as apparently demonstrating his purported rights.  *Id.* ¶¶ 17 and 18.  Each

22   of his pending trademark applications is for the following design:



28   (Exs. 14 and 15.)

1    In preparing those still-pending trademark applications, Mr. Sanchez
2    identified the mark that he is attempting to obtain rights in as:

> The color(s) neon green and white and black is/are claimed
> as a feature of the mark. The mark consists of neon green,
> white and black, the words "Weedmenu" with a capital
> "W" with two leaves over the text, one on the right
> considerably larger than other. The word "Weed" is neon
> green as is the larger leaf. The word "menu" is white as is
> the smaller leaf. The word "Weedmenu" is in tech font.
> The background of logo is black.

8    Mr. Sanchez had previously sought, but then abandoned, his trademark
9    application, Serial No. 87299203, for a design copying Weedmaps' design:



14   (Ex. 16).
15   By abandoning his prior design application, Serial No. 87299203, and filing new
16   trademark applications with a different design, Mr. Sanchez has effectively
17   acknowledged that his trademark applications are limited to specific designs and
18   cannot broadly cover any use of the characters "WEEDMENU."
19   Yet, Mr. Sanchez has failed to state a claim for which relief can be granted at
20   least because he has not identified any alleged infringement of that design mark. Mr.
21   Sanchez bases his complaint on the weedmenu.com website, a screenshot of which
22   is provided as Exhibit 1. The "Weed Menu" logo used on that website is:



27   (Ex. 2).
28   / / /

-10-

Mr. Sanchez cannot reconcile the significant design differences between his pending trademark applications and the Weed Menu logo above from the weedmenu.com website. Mr. Sanchez has not even attempted to plead any facts to support the *Sleekcraft* factors, as required for showing infringement of a design trademark. *See DC Comics v. Towle*, 989 F. Supp. 2d at 957. His complaint, therefore, lacks a cognizable legal theory and to the extent that it identifies a cognizable legal theory, it fails to allege sufficient supporting facts and should be dismissed. *Hinds Investments, L.P.*, 654 F.3d at 850.

For example, Mr. Sanchez's Claim 1, alleging false designation of origin under the Lanham Act, fails to plead facts regarding the design that Mr. Sanchez apparently contends identifies such origin. Mr. Sanchez's Claim 2, alleging common law trademark infringement similarly fails to plead facts regarding the design that Mr. Sanchez apparently claims as his rights. Mr. Sanchez's Claims 3 and 4, alleging trademark infringement under the Lanham Act's Sections 1114 and 1125(a), respectively, similarly fail to plead facts regarding the description of the non-granted mark in Mr. Sanchez's pending trademark applications. Mr. Sanchez's Claim 5, alleging cybersquatting, ignores that internet domains are inherently character-limited and cannot include design elements as required by Mr. Sanchez's pending trademark applications. Mr. Sanchez's Claims 6 and 7, for unfair competition, depend upon Mr. Sanchez's other claims and therefore fail with them. Even if Weedmaps was responsible for the weedmenu.com website and the "Weed Menu" logo there—which it is not—Mr. Sanchez's claims would still be deficient and should be dismissed.

**B.    Even Under Mr. Sanchez's Theory, Weedmaps Has Prior Use of the Character Mark**

As discussed above, Mr. Sanchez's pending trademark applications are for design marks, not standard character marks. Nonetheless, even if Mr. Sanchez could plausibly allege to have rights in the standard character mark WEEDMENU, his

pleadings would still fail as a matter of law because, even under his pled theory, Weedmaps would have prior use of that standard character mark.  Mr. Sanchez has acknowledged the *Weedmaps vs. Sanchez* case.   Complaint ¶ 26.   Weedmaps identified in that prior case its Supplemental Register trademark registration for the WEEDMENU standard character mark.  Ex. 5 ¶ 20; Ex. 17.

In his own complaint, Mr. Sanchez points out instances that show that Weedmaps had prior use of the WEEDMENU mark. Mr. Sanchez bases his allegations against Weedmaps on what appears to be a screenshot of a document executed in 2012 that Mr. Sanchez alleges involved Weedmaps and the weedmenu.com domain.  Complaint at 7 (though difficult to read, the sentence in the screenshot appears to state "This Assignment of Domain Name is made effective as of the 31st day of December 2012…."). Mr. Sanchez also alleges that Weedmaps "has squatted on domain weedmenu.com since 2012."  Complaint ¶ 33.  However, Mr. Sanchez claims to have only first used the mark in commerce in 2017. Complaint ¶ 12.  Even if Mr. Sanchez's pled facts were to be accepted, they would simply establish that Weedmaps—*not* Mr. Sanchez—holds rights in the mark WEEDMENU.   Mr. Sanchez's Lanham Act and common law trademark claims would therefore fail because of his admitted later use of the mark he nonetheless claims to have first use in commerce of. Relatedly, Weedmaps would be unable to cybersquat on a mark that it allegedly began using through the weedmenu.com website several years before Mr. Sanchez began to use the WEEDMENU name.

**C.**   **Mr. Sanchez is Impermissibly Seeking to Enforce Unregistered, Pending Trademark Applications**

Mr. Sanchez does not assert any registered trademark.  Instead, Mr. Sanchez is attempting to assert rights in pending trademark applications.  But trademark infringement actions under the Lanham Act require that the trademark at issue be registered—claims cannot be pursued based on pending applications. *Bentley v. NBC Universal, LLC*, No. CV1603693TJHKSX, 2016 WL 10570587, at *2 (C.D.

-12-

Cal. Sept. 28, 2016); *see also JAT Wheels Inc. v. JNC Wheel Collection*, No. CV 14–04898 JVS, 2014 WL 4568323 at \*2 (C.D. Cal. Sept. 8, 2014), *Wal–Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 209 (2000).  At least Mr. Sanchez's Claims 1, 3, 4, and 5 should therefore be dismissed for failure to allege sufficient facts to support his Lanham Act claims.

## V.  CONCLUSION

For the foregoing reasons, Weedmaps respectfully requests that Mr. Sanchez's claims against it be dismissed with prejudice.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: April 4, 2019

*/s/ Alan G. Laquer*
Alan G. Laquer
Jonathan A. Menkes

Attorneys for Defendant
GHOST MANAGEMENT GROUP, LLC
d/b/a WEEDMAPS

-13-